IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:24-CV-1096-DII |
| | § | |
| BRUCE ELFANT, *in his official capacity as Travis County Tax Assessor-Collector and Voter Registrar*, et al., | § § § § | |
| | § | |
| Defendants. | § | |

**ORDER**

Defendants Bruce Elfant, Andy Brown, Jeff Travillion, Brigid Shea, Ann Howard, and Margaret Gómez[1] ("Defendants") removed this case to this Court on September 17, 2024. (Dkt. 1). Before the Court is Plaintiff State of Texas's ("Texas") motion for remand, filed the same day. (Dkt. 2). Defendants filed a response, (Dkt. 13), and Texas filed a reply, (Dkt. 15). The parties have also filed multiple supplements to their respective filings. (Dkts. 12, 14, 16, 18, 19, 22). Having considered the briefing, the applicable law, and the record, the Court grants Texas's motion to remand.

**I. BACKGROUND**

This case involves Texas suing one of its own counties—Travis County—for allegedly *ultra vires* acts that the County took in distributing voter registration forms ahead of the 2024 election. The Court begins by noting that this is one of two cases before the Court that stems from this dispute. *See Brown v. Paxton*, 1:24-cv-01095-DII (W.D. Tex. filed September 17, 2024) (the "Parallel Litigation"). Due to the scarcity of facts in the briefing before the Court in this case, the Court incorporates some background facts from the Parallel Litigation.

---
[1] Defendants were all sued in their official capacities.

1

On July 19, 2024, Travis County issued a bid for voter outreach services. Complaint, ¶ 43, *Brown*, 1:24-cv-01095-DII, ECF No. 1. The scope of work was to "match [the county's] existing registered voter database against [the provider's] database of eligible, Travis County-residing citizens to facilitate the county's voter registration outreach efforts." *Id.* ¶ 44. After there was only one bidder, on August 2024, Defendant Bruce Elfant, the County Voter Registrar, recommended that the bidder be awarded the bid. *Id.* ¶¶ 45, 46. On August 27, 2024, the Travis County Commissioners Court held a public meeting, at which time it approved Elfant's recommendation and hired Civic Government Solutions ("CGS"). *Id.* ¶ 46; (Original Pet., Dkt. 1-1, ¶¶ 16, 17). Travis County's contract with CGS tasked CGS with identifying "any current Travis County resident that is at least 18 years of age, a US citizen, and not already registered to vote." (Original Pet., Dkt. 1-1 ¶ 21). CGS was to "provide Travis County a list . . . of the resultant, Eligible Resident-Citizens and their current residence address and mailing address." (*Id.*).

On September 5, 2024, Texas filed suit against Defendants in the 200th Judicial District Court of Travis County, Texas. (Original Pet., Dkt. 1-1). Defendants are elected officials of Travis County, including the Travis County Tax Assessor-Collector and Voter Registrar, the County Judge, and all members of the Travis County Commissioners Court. (*Id.* ¶¶ 8–13). Texas alleges that Defendants lacked any authority under state law to contract with a vendor to identify Travis County citizens who were not registered to vote for the purpose of mailing them voter registration forms. (*See id.* ¶¶ 36–45). Texas claims that Travis County's actions may lead individuals who are ineligible to vote to believe they may register. (*Id.* ¶ 44). In its original petition, Texas asked the state court for a temporary restraining order ("TRO"), a temporary injunction, and a permanent injunction to enjoin Defendants from executing their contract with CGS or preventing them from acting under that contract. (*Id.* ¶ 54). On September 16, 2024, the Travis County court denied Texas's request for a TRO. (Dkt. 2-1).

2

The next day, on September 17, 2024, Defendants removed the case to this Court on the basis that although Texas's original petition appears to only raise state law claims, the petition "in fact arises under federal law." (Not. Removal, Dkt. 1, ¶ 5). This is so because, according to Defendants, the actions that Texas challenges are authorized under the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.* (*Id.*). In addition to removing the present case, on September 17, Defendants filed an original complaint against Texas under the NVRA. *See* Complaint, *Brown*, 1:24-cv-01095-DII, ECF No. 1. In the Parallel Litigation, Defendants ask for equitable and injunctive relief from Texas's attempts at "prevent[ing them] from fulfilling their duties and responsibilities under the NVRA to register voters . . . ." *Id.* at 17.

On September 17, Texas also filed the instant motion to remand. (Dkt. 2). Texas alleges that Defendants removed this case in bad faith to avoid state appellate review of the state trial court's denial of Texas's request for emergency injunctive relief. (*Id.* at 2). Texas argues that this Court lacks federal question jurisdiction over this case and requests that this Court remand the case to state court. (*Id.* at 4, 9). Texas also requests that this Court award it attorneys' fees that it incurred as a result of Defendants' "improper removal." (*Id.* at 11). Defendants filed a response, arguing that its removal was proper under two federal question jurisdiction doctrines. (Resp., Dkt. 13). Texas filed a reply, (Dkt. 15). Texas also filed a renewed motion to remand, (Dkt. 18), and Defendants filed a renewed response in opposition, (Dkt. 22).

## II. LEGAL STANDARD

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441. Accordingly, a federal court must remand a case back to state court (1) if there was a procedural defect rendering removal improper and the moving party raises the defect within thirty days of removal; or (2) if the court lacks subject matter jurisdiction. 28 U.S.C. § 1447; *see also BEPCO, L.P. v. Santa Fe Minerals, Inc.*, 675 F.3d 466, 470 (5th

Cir. 2012). The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Accordingly, contested issues of fact and ambiguities of law are resolved in favor of remand. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F. 3d 242, 249 (5th Cir. 2011).

### III. DISCUSSION

#### A. Federal Question Jurisdiction

Defendants assert that although Texas's original petition only alleges a state law *ultra vires* claim, this case actually arises under federal law—specifically, the NVRA. (Resp., Dkt. 13, at 2). As such, Defendants argue that removal was appropriate under two theories of federal question jurisdiction: the "complete preemption" doctrine and the *Grable* doctrine for cases involving a substantial question of federal law. (*Id.* at 2–3). Texas refutes that either doctrine supports subject matter jurisdiction in this case. (Reply, Dkt. 15, at 2–3). The Court will first provide some brief background on the NVRA before analyzing both of Defendants' theories for jurisdiction.

In 1993, Congress enacted the NVRA to combat low voter registration and participation rates and to help address a long history of discriminatory practices in voting systems and laws. Congress specifically found that "the right of citizens of the United States to vote is a fundamental right," that "it is the duty of the Federal, State, and local governments to promote the exercise of that right," and "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 25 U.S.C. §§ 20501(a)(1)–(3). The purposes of the NVRA were (1) "to establish procedures that will increase the number of eligible

citizens who register to vote in elections for Federal office"; (2) "to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office"; (3) "to protect the integrity of the electoral process"; (4) and "to ensure that accurate and current voter registration rolls are maintained." *Id.* §§ 20501(b)(1)–(4). As relevant to this case, the NVRA mandates, "The chief State election official of a State shall make [federally-prescribed voter registration application forms] available for distribution through governmental and private entities, with particular emphasis on making them available for organized voter registration programs." *Id.* § 20505(b).

The NVRA was enacted pursuant to the Elections Clause of the U.S. Constitution, which states, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. 1, § 4, cl. 1. Under the Constitution's Election Clause, Congress may enact laws that preempt state election laws concerning federal elections. *See Foster v. Love,* 522 U.S. 67, 69 (1997). "When it does, the federal legislation renders any conflicting state laws inoperative." *Voting for America, Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013). "To this end, state election laws cannot 'directly conflict' with federal election laws on the subject." *Id.* (internal quotation omitted).

1. Complete Preemption

Defendants first argue that removal is appropriate under the "complete preemption" doctrine. (Resp., Dkt. 13, at 3). Generally, in assessing whether a claim arises under federal law, courts examine the "well pleaded" allegations of the complaint and ignore potential defenses:

> [A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States.

5

*Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, (1908). "Thus, a defense that relies on the preclusive effect of a prior federal judgment, or the pre-emptive effect of a federal statute will not provide a basis for removal." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (cleaned up). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.*

However, "[w]hen a federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law . . . . [and] is removable under" § 1441(b). *Id.* at 8. Under the complete preemption doctrine, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008)). To date, the Supreme Court has only recognized the complete preemption doctrine in the context of three statutes. *See Anderson*, 539 U.S. at 4 (National Bank Act); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) (Employee Retirement Income Security Act of 1974 ("ERISA")); *Avco Corp. v. Machinists*, 390 U.S. 557 (1968) (Labor Management Relations Act).

The Fifth Circuit has held that to establish complete preemption justifying removal, a defendant must show that: (1) "the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law," (2) "there is a specific jurisdictional grant to the federal courts for enforcement of the right," and (3) "there is a clear Congressional intent that claims brought under the federal law be removable." *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (cleaned up). In assessing the third prong of this test, the Fifth Circuit has recognized that this prong must focus not on whether Congress intended the claim to be

6

"removable," but instead on whether it was "Congress's intent that the federal action be exclusive." *Id.*

In asserting a theory of complete preemption, Defendants first argue that the *Gutierrez* three-part test should not apply to their case because the test was developed in the context of assessing statutes enacted pursuant to Congress's Commerce Clause powers. (Resp., Dkt. 13, at 4). Defendants' argument is based on the notion that courts generally apply a presumption against preemption in the context of Commerce Clause statutes, *see Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, (1947); whereas, this presumption does not apply for statutes enacted under the Elections Clause because when Congress legislates under the Elections Clause, it "necessarily displaces some element of a pre-existing [state] legal regime." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 13–14 (2013) ("*ITCA*"). Defendants reason that this Court should, in the context of Elections Clause statutes, reverse the normal presumptions and "presume Congress has intended to completely preempt" conflicting state provisions. (Resp., Dkt. 13, at 6).

Defendants also argue that complete preemption exists even if the *Gutierrez* test applies to Elections Clause statutes. Under the first prong, they assert that "the NVRA creates a civil enforcement provision that includes a cause of action that replaces and protects the analogous area" of Texas's state law claim because the NVRA creates both a cause of action for the Attorney General and a private right of action to sue for violations of the NVRA. (Resp., Dkt. 13, at 7 (citing 52 U.S.C. §§ 20510(a), (b))). Defendants argue that Texas's cause of action falls under the NVRA's civil enforcements provisions because it "questions the lawfulness of conduct by local government officials that the NVRA expressly regulates." (*Id.*). Under the second prong of *Gutierrez*, Defendants argue that "the NVRA contains a specific jurisdictional grant of power to federal courts for its enforcement" because its civil enforcement provisions explicitly authorize action in an "appropriate district court." (*Id.* at 9 (quoting 52 U.S.C. §§ 20510(a), (b))). Third, Defendants contend that

7

"Congress intended the NVRA to be the exclusive law with regard to whether local governments have a duty . . . to distribute federally-prescribed voter registration forms." (*Id.*). They argue that this conclusion "flows directly from the fact that the NVRA was enacted pursuant to Congress's Elections Clause power." (*Id.*).

The Court finds Defendants' complete preemption arguments unpersuasive. Defendants provide no case law to support their argument that courts should automatically extend the complete preemption doctrine in all instances where defendants raise a preemption defense based on a federal statute passed pursuant to the Elections Clause. Their argument also intermixes two different strands of law: preemption defenses generally and removal based on complete preemption. It does not necessarily follow that because the presumption against preemption does not apply in the Elections Clause context that therefore cases involving issues of preemption under Election Clause statutes should be automatically removed to federal courts. While it is true that "federalism concerns . . . are somewhat weaker" in regard to congressional action under the Elections Clause, *see ITCA*, 570 U.S. at 14, "significant federalism concerns" still exist in the context of removal because "the effect of removal is to deprive the state court of an action properly before it." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). Accordingly, Defendants' position runs afoul of the Fifth Circuit's instruction that the removal statute be "strictly construed and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch*, 491 F.3d at 281–82. The Court will thus proceed to analyze Defendants' complete preemption argument under the three-part test in *Gutierrez*.

Even under *Gutierrez*, the Court is not convinced that the NVRA completely preempts Texas's state law claim. Although the NVRA plainly has civil enforcement provisions that provide for a jurisdictional grant of power to federal courts, it is not clear that these provisions create causes of action that "both replace[] and protect[] the analogous area of state law," *Gutierrez*, 543 F.3d at

8

252. Nor is it clear that the NVRA was intended to be the exclusive law with which to assess Texas's cause of action in this case. It is true that at times, the NVRA includes specific instructions to states. *See, e.g.*, *id.* § 20504 (mandating that each state shall include a voter registration application form as part of a state's application for a driver's license); *id.* § 20505 (mandating that a state must accept and use a specific mail voter registration application). However, it is also true that the NVRA expressly contemplates that its provisions would be implemented in tandem with state regulation over voter registration. For example, the NVRA mandates that "notwithstanding any other Federal or State law, *in addition to any other method of voter registration provided for under State law*, each State shall establish procedures to register to vote in elections for Federal office . . . ." 52 U.S.C. § 20503(a) (emphasis added).

Because the NVRA envisions a legal scheme of state regulations implementing the statute, the NVRA does not "so forcibly and completely displace state law" such that Texas's cause of action "is either wholly federal or nothing at all." *Casey v. Rainbow Grp., Ltd.*, 109 F.3d 765 (5th Cir. 1997). It may or may not be the case that Defendants have a valid preemption defense under the NVRA; this Court does not reach that issue. However, "complete preemption," which creates federal removal jurisdiction, differs from "ordinary preemption," which does not. *Johnson v. Baylor U.*, 214 F.3d 630, 632 (5th Cir. 2000); *see also Fran. Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 14 (1983) ("[S]ince 1887 it has been settled law that a case may not be removed to a federal court on the basis of a federal defense, including the defense of preemption . . ."). The Supreme Court has only recognized three instances where complete preemption exists. The Court is not convinced that the NVRA should be added to this short and rare list of statutes. Accordingly, the Court finds that complete preemption does not support Defendants' removal.

2. *Grable* Doctrine

Defendants next argue that Texas's cause of action raise a significant federal issue that creates federal jurisdiction under the *Grable* doctrine. In *Grable*, the Supreme Court recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). *Grable* applies if: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020); *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013). The *Grable* elements are "difficult to meet," *Lamar Co.*, 976 F.3d at 529, and the category of cases that satisfy these requirements is "'special and small,'" *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Gunn*, 568 U.S. at 258). Like most federal question doctrines, *Grable* is applied in the shadow of the well-pleaded complaint rule. *Lamar Co.*, 976 F.3d at 529. Accordingly, courts look to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable. Id.* The Fifth Circuit has advised, "The type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law. For example, a negligence claim that is premised on the existence of a duty established by federal law creates a federal question." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022).

Defendants argue that the *Grable* doctrine applies to this suit because the issue of "whether Defendants . . . have a federal law duty or authority [under the NVRA] to promote voter registration for federal elections raises a substantial question of federal law." (Resp., Dkt. 13, at 13). The Court disagrees. An illustrative case on this issue is *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580 (5th Cir. 2022). In *Mitchell*, a nursing home resident passed away from complications due to COVID-19. The

10

executor of her estate brought suit in state court against the nursing home alleging negligence claims under Texas law. The nursing home removed the case to federal court, arguing that the Public Readiness and Emergency Preparedness Act (the "PREP Act") completely preempted the state law claims and that the PREP Act's immunity provisions and preemptive effect created a significant federal issue under the *Grable* doctrine. *Id.* at 584. The Fifth Circuit rejected the application of the *Grable* doctrine because "the relevance of the Act's immunity provisions is defensive, as is its preemptive effect." *Id.* at 589. The Fifth Circuit noted that the defendants could raise a preemption defense to the plaintiff's claims but "when a federal issue is raised '[a]s a defense, it does not appear on the face of a well-pleaded complaint.'" *Id.* (quoting *Metro. Life Ins. Co.*, 481 U.S. at 63). Accordingly, because the federal issues surrounding the PREP Act were not raised or disputed on the face of the plaintiff's complaint, the Fifth Circuit found that *Grable* did not support removal. *Id.*

Similarly, here, Defendants raise various provisions of the NVRA as a defense to Texas's claim, arguing that the NVRA either mandated or authorized their actions. However, Texas's original petition raises no such federal issue. The petition only raises an *ultra vires* claim that arises under Texas state law. Again, this Court does not decide whether the NVRA does in fact authorize Defendants' actions or preempt Texas's claims, rather the Court only decides whether Defendants' invocation of the NVRA authorizes removal. Under the well-pleaded complaint rule and *Mitchell*, it is clear that federal issues are not raised on the face of Texas's original petition. Accordingly, the *Gable* doctrine cannot support Defendants' removal.

Having rejected both of Defendants' theories of federal question jurisdiction, the Court finds that it lacks subject matter jurisdiction over this case. As such, this Court must grant Texas's motion to remand.

**B. Request for Attorney's Fees**

Having decided that remand is proper, the Court next turns to Texas's request for attorney's fees under 28 U.S.C. § 1447(c). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005); *Am. Airlines, Inc. v. Sabre, Inc.,* 694 F.3d 539, 541–42 (5th Cir. 2012). The decision about whether to award attorney's fees under this provision is at the full discretion of the court. *Howard v. St. Germain,* 599 F.3d 455, 457 (5th Cir. 2010); *Redus v. Univ. of the Incarnate Word*, 61 F. Supp. 3d 668, 679 (W.D. Tex. 2014).

Texas argues that an award of attorney's fees is warranted because it alleges that Defendants removed this case "to skirt forthcoming judicial review of their illegal conduct." (Mot., Dkt. 2, at 11). Texas asserts that it was unreasonable for Defendants to remove on the basis of their NVRA defense because it is a "well-settled principle" that defenses cannot form the basis for removal. (*Id.*). Defendants counter that a fees award is not appropriate here because of the difficulty that courts have in determining whether individual suits "arise under federal law." (Resp., Dkt. 13, at 18). According to Defendants, this difficulty means that Defendants still had an objectively reasonable basis to remove this case, even if the Court ultimately finds that removal was unwarranted. (*Id.* at 19).

Although the Court disagrees with Defendants' arguments surrounding the applicability of the complete preemption and *Grable* doctrines, the Court does not find that Defendants lacked an objectively reasonable basis for relying on these doctrines. As Defendants note, these doctrines can be difficult to apply, and litigants may not know how courts will apply these doctrines to a specific federal statute until there is binding precedent as to that statute. The Court is unaware of any

12

binding precedent—nor did Texas provide the Court with any caselaw—stating that the NVRA does not completely preempt state law *ultra vires* claims or that the *Grable* doctrine does not apply to NVRA defenses for such claims. As such, Defendants had an objectively reasonable basis to test their removal theories, even if they are ultimately unsuccessful. Moreover, the Court finds that there is no evidence that Defendants removed this case in bad faith. The only state court to have considered this case so far denied *Texas* injunctive relief—not Defendants. Texas's allegations that Defendants removed this case to avoid an unfavorable state appellate decision is only conjecture at this stage because a state appellate court has not yet considered the merits of this case. Accordingly, the Court in its discretion denies Texas's request to award it attorney's fees as part of the Court's order to remand.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Texas's motions to remand, (Dkts. 2, 18), are **GRANTED**. This case is **REMANDED** back to the 200th Judicial District of Travis County, Texas.

The Clerk of the Court is directed to **CLOSE** this action.

**SIGNED** on October 10, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE